UNION NAT. BANK OF JOHNSTOWN, PA.
v. PEOPLE'S SAVINGS & TRUST CO.,
OF PITTSBURGH, PA.

Circuit Court of Appeals, Third Circuit.
September 26, 1928.

No. 3765.

Robert C. Hoerle, of Johnstown, Pa., and Thomas H. Hasson, of Pittsburgh, Pa., for appellant.

George D. Wick, William E. Hague, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court, dismissing exceptions to the master's report.

The Union National Bank of Johnstown loaned $17,500 to the Jersey Cereal Food Company upon its judgment notes therefor. When these notes became due, the bank demanded payment, but the Jersey Company was unable to pay, and gave the bank its gold notes, aggregating $19,000, as further evidence of the original loan of $17,500. The bank says that these notes were given "as additional security for the payment of the original judgment notes, totaling $17,500, and in consideration of an extension of time for the payment of the original notes."

The Jersey Company became indebted to various creditors in the sum of approximately $510,000, and some were threatening suits and attachment proceedings. A bill was filed, wherein it was alleged that the assets of the company were greater than its liabilities, but its property was likely to be subjected to judgments, executions, and attachments, which would interrupt the business and result in great loss, unless a receiver was appointed to continue the business and prevent the suits. An answer was filed by the Jersey Company, admitting these facts, and consenting to the appointment of a receiver. Thereupon the Real Estate Trust Company of Pittsburgh was appointed, and later the appellee was substituted as receiver. In due time the receiver filed its account, and a master was appointed to prepare a schedule of distribution among the creditors in accord-

ance therewith. The appellant bank presented to the master a written claim, asking for pro rata distribution to it, not upon the indebtedness of $17,500, but upon the judgment notes and the gold notes, both aggregating $36,500. The master disallowed that part of the claim which was based upon the gold notes for $19,000, and the District Court affirmed the master. The bank appealed to this court.

All the assignments of error as to findings of fact and conclusions of law relate in one way or another to the failure of the master and District Court to allow the gold notes as part of the bank's provable claim, so that it would receive a pro rata share of the fund to be distributed among the creditors on the basis of $36,500, instead of $17,500, the actual amount loaned to the Jersey Company. The sole question is whether or not these gold notes should have been allowed as part of the bank's provable claim, entitling it to a distributive share of the fund on the basis of $36,500, so long as the percentage received did not exceed $17,500.

The bank contends that, when the original notes, aggregating $17,500, were due, and payment was demanded and refused, which was before the bill was filed, and while the Jersey Company was presumably solvent, the gold notes were given as additional security of the original obligation of $17,500, and the further extension of credit was the consideration therefor. The gold notes are sometimes called "additional" and sometimes "collateral" security, but the bank says that "it makes no difference by what term they are designated, as the position of the appellant that, whether the term collateral or additional security is used, the principle that 'the collateral security stands by the side of the principal promise as an additional or cumulative means for securing the debt' applies." 11 Corpus Juris, p. 961. And in Osborne v. Stringham, 4 S. D. 593, 598, 57 N. W. 776, 778, the court said of "collateral security": "When a debtor delivers to his creditor an evidence of indebtedness, with the intention that it become additional security for his personal existing obligation, it becomes merely concurrent security, and is designed only to increase the means of the creditor to realize the principal debt which it is given to secure." There is no question about the principle of law that a debtor may give collateral and additional security to secure his obligations, and the holder of such security may dispose of it in accordance with the terms thereof as a means of collecting his debt. It may be, as the appellant contends, that, when the

debtor has given collateral security larger in amount than the real debt intended to be secured thereby, the holder of the security in insolvency proceedings may prove for the amount of his security.

But the question arises here as to whether or not the gold notes are, strictly speaking, collateral or additional security. The term "collateral security" implies the transfer to a creditor of an interest in or a lien on property, or an obligation which furnishes a security in addition to the responsibility of the debtor. The execution and delivery by the debtor of additional unsecured evidence of his indebtedness does not constitute collateral security. It is not collateral security for the payment of the original debt. The gold notes did not purport to secure the original judgment notes. In form they were evidence of another debt; the consideration being, appellant says, the further extension of credit and the forbearance to sue upon the judgment notes. The appellant treats them, on the one hand, as evidence of a separate indebtedness, based upon a new and legal consideration, and asserts the right to prove his claim for the original debt and for the debt evidenced in the gold notes, aggregating the amount of both obligations; yet, on the other hand, it treats these gold notes as collateral security, and claims the right to receive only the amount of the original indebtedness of $17,500.

The fact is that these notes are not collateral or additional security. They depend for their value on the credit of the Jersey Company alone. In re Waddell-Entz Co., 67 Conn. 324, 334, 35 A. 257. They doubtless furnished an additional remedy by which the creditor could collect its original debt; but, when insolvency occurred, the real question was, not what remedy might be had against the insolvent corporation, but simply what was the amount of the actual debt due from the insolvent estate to it. Such debt, and such only, can be proved as a basis for an equitable distribution of the trust fund which the estate constitutes. Out of this trust fund every creditor receives a pro rata share of his debt. The real debt due the bank by the Jersey Company was $17,500, evidenced by three judgment notes for $5,000 each and one for $2,500. Nothing was added to this debt by giving additional notes and another promise to pay. Any rule which would permit the proof of 2 notes for one debt would permit the proof of 20 notes, and would substitute for an equitable pro rata distribution among creditors an indefinite rule, depending upon the ability of the creditor to secure from the debtor additional and numerous evidences of the same debt, and would thus effect an inequitable result, whereby creditors would not receive the same pro rata share out of the insolvent estate. John Matthews, Inc., v. Knickerbocker Trust Co. (C. C. A.) 192 F. 557. The standing of these gold notes as a debt against the insolvent estate depends upon their valid assignment to an innocent purchaser for value without notice. No such fact having occurred, they have no standing, and may not be allowed to be proved in order to increase the debt on which the bank will receive a pro rata share. This proposition has rarely been discussed in reported cases, because it is self-evident. The principle, however, has been discussed by numerous courts. People v. Remington, 54 Hun, 480, 8 N. Y. S. 31, affirmed in 121 N. Y. 675, 24 N. E. 1095; Third Nat. Bank v. Eastern R. R. Co., 122 Mass. 240.

It is true that a creditor, holding collateral security, may in the case of nonpayment pursue all his remedies together, or pursue them singly. He has a legal property interest in the security, as well as in the debt, and he has the legal right to exercise his choice of remedies in enforcing his right. But, when insolvency occurs, he must share pro rata with all the other creditors upon the basis of his real debt, regardless of whether or not he holds one or two notes for it. First National Bank of Beaumont v. Eason (C. C. A.) 149 F. 204; Hitner et al. v. Diamond State Steel Co. (C. C.) 176 F. 384; Curtis v. Walpole Tire & Rubber Co. (D. C.) 227 F. 698.

The District Court did not err in dismissing the exceptions, and the decree is affirmed.