113 F.3d 645
 Fed. Sec. L. Rep. P 99,451
CAREMARK, INCORPORATED, a California corporation, and
Caremark International Incorporated, a Delaware
corporation, Plaintiffs-Appellants,
v.
CORAM HEALTHCARE CORPORATION, a Delaware corporation,
Defendant-Appellee.
 No. 96-1166.
 United States Court of Appeals, Seventh Circuit.
 Argued May 20, 1996.
Decided April 18, 1997.
 
 Steven L. Bashwiner, Mary Ellen Hennessy (argued), Sheldon T. Zenner, Sean M. Berkowitz, Lisa Noller, Katten, Muchin & Zavis, Chicago, IL, for Plaintiffs-Appellants.
 Peter C. John, Thomas L. Duston, Matthew M. Getter, Hedlund & Hanley, Chicago, IL, Michael A. Kahn, Douglas W. Sullivan, Samuel R. Miller (argued), Katherine Livingston, Julie M. Kennedy, Theresa I. McFarland, Folger & Levin, San Francisco, CA, for Defendant-Appellee.
 Before CUDAHY, COFFEY and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Caremark, Incorporated appeals the district court's grant of judgment on the pleadings in favor of Coram Healthcare.[1] Because we believe that the complaint adequately states a cause of action for fraud under the securities laws, we reverse the judgment of the district court and remand the case for further proceedings.
 
 
 2
 * BACKGROUND
 
 A.
 
 3
 Because this case comes to us from a dismissal on the pleadings, we must take the allegations in the complaint as true. Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir.1997); Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 401 (7th Cir.1996).
 
 
 4
 During 1994 and 1995, Coram negotiated with Caremark to buy the latter's home infusion business. In April 1995, that sale was completed. In return for its business, Caremark received a cash payment of $209 million and notes with a face value of $100 million. Caremark negotiated and accepted these terms based on Coram's representations that its business strategy was to focus on the home infusion market.
 
 
 5
 However, while the negotiations between Coram and Caremark were underway, Coram was also negotiating secretly to buy Lincare, a provider of respiratory services. Caremark was unaware of the Coram/Lincare negotiations. Twelve days after the sale of Caremark's business to Coram, Coram announced its planned merger with Lincare. The value of Coram's stock then dropped dramatically, and the secondary market for its notes also dropped as the stock fell in value. In July 1995, Coram and Lincare mutually agreed not to go ahead with their planned merger.
 
 
 6
 Caremark alleges that, if it had known of the Coram/Lincare negotiations, it would have valued the notes differently on the date of closing. It claims that it has been damaged because the notes it received from Coram were worth less on that day than Coram were worth less on that day than Coram represented them to be worth. Accordingly, Caremark brought this action alleging a violation of Rule 10b-5, promulgated under 15 U.S.C. § 78j(b), and various supplemental state claims.
 
 B.
 
 7
 The district court held that the complaint did not state a violation of Rule 10b-5. In the court's view, Caremark had failed to allege adequately loss causation. The court noted that, although Coram did not disclose its negotiations to buy Lincare's respiratory business prior to closing its merger with Caremark, Coram did disclose that it was seeking other home infusion businesses to acquire. The court further noted that Caremark did not allege that Coram diverted more energies toward the Lincare acquisition than it might have expended toward the acquisition of a home infusion company. Therefore, the court reasoned, Caremark could not allege that Coram had expended its corporate resources in a manner unexpected by the Coram/Caremark agreement. Moreover, continued the court, it would be impossible for Caremark to prove such an allegation because the representations in Coram's Form 10-K show that the parties contemplated that, at the very least, Coram would pursue mergers with other home infusion providers. The district court therefore concluded that Caremark's alleged loss due to the undisclosed Lincare transaction was no greater than the loss it might have suffered because of a hypothetical merger transaction whose possibility had been disclosed adequately.
 
 II
 DISCUSSION
 A.
 
 8
 As we have noted earlier, this case comes to us at a very early stage of the litigation. The district court dismissed the complaint on the ground that the allegations did not state a cause of action. See Fed.R.Civ.P. 12(b)(6). When reviewing a complaint in this procedural posture, the district court must take the allegations of the complaint as true and give the plaintiff the benefit of all inferences. Ledford, 105 F.3d at 356; Wilczynski, 93 F.3d at 401. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Because the district court may not dismiss the complaint unless the complaint is legally insufficient, our review of that decision is de novo. Ledford, 105 F.3d at 356; Wilczynski, 93 F.3d at 401. As the Supreme Court of the United States stated in Scheuer v. Rhodes:
 
 
 9
 When a federal court reviews the sufficiency of a complaint, ... its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.
 
 
 10
 416 U.S. 232, 236 (1974).
 
 B.
 
 11
 The federal claim before us alleges a violation of Rule 10b-5. In such an action, the plaintiff must establish that: (1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages. In re HealthCare Compare Corp. Sec. Litig., 75 F.3d 276, 280 (7th Cir.1996); Stransky v. Cummins Engine Co., 51 F.3d 1329, 1331 (7th Cir.1995).[2] In this case, we are concerned principally with the causation requirement.
 
 
 12
 A plaintiff in a securities fraud action under Rule 10b-5 must plead adequately not only "transaction causation" but also "loss causation." LHLC Corp. v. Cluett, Peabody & Co., 842 F.2d 928, 931 (7th Cir.), cert. denied, 488 U.S. 926 (1988).[3]
 
 
 13
 As this court has noted previously, these terms are "ungainly to start with because they conscript nouns for service as adjectives [and] have been confusing in practice.... Used without care, these terms hinder rather than facilitate understanding." Id. To plead transaction causation, the plaintiff must allege that it would not have invested in the instrument if the defendant had stated truthfully the material facts at the time of sale. To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries. Id.
 
 
 14
 In Bastian v. Petren Resources Corp., 892 F.2d 680 (7th Cir.), cert. denied, 496 U.S. 906 (1990), this court addressed the distinction between these two types of causation. It held that it was not sufficient for an investor to allege only that it would not have invested but for the fraud. Id. at 683. Such an assertion alleges transaction causation, but it does not allege loss causation. Rather, it is also necessary to allege that, "but for the circumstances that the fraud concealed, the investment ... would not have lost its value." Id.[4]
 
 
 15
 This requirement of "loss causation," which we have described as nothing more than the "standard common law fraud rule," id., ought not be construed as a metaphysical term, but rather as a practical requirement. See Rankow v. First Chicago Corp., 870 F.2d 356, 367 (7th Cir.1989). It ought not place unrealistic burdens on the plaintiff at the initial pleading stage. It does not require, for instance, that the plaintiff plead that all of its loss can be attributed to the false statement of the defendant. Such a burden would be far more stringent than the common law tort requirement upon which the requirement is based and would impose a burden on the plaintiff specifically forbidden by our case law. See Ackerman v. Schwartz, 947 F.2d 841, 849 (7th Cir.1991) (noting that the task of apportionment of damages is for the trier of fact). Nor does the requirement of pleading loss causation require that the plaintiff allege that it could not have suffered the same damage under other circumstances. Rather, the requirement is straightforward: The plaintiff must allege that it was in fact injured by the misstatement or omission of which it complains.
 
 C.
 
 16
 The complaint filed in this case is hardly a model of good draftsmanship. Its scatter-gun approach made it most difficult for the district court to discern the gravamen of Caremark's allegations and to deal with them fairly and expeditiously.[5] We have shared the burden of our colleague in the district court during these appellate proceedings. Nevertheless, we believe that a fair reading of the complaint establishes that Caremark has alleged a cause of action under Rule 10b-5.
 
 
 17
 More precisely, we believe that Caremark adequately has pleaded loss causation. It has alleged that Coram did not disclose that it was negotiating a merger with a home respiratory care provider. Caremark has also alleged a plausible theory connecting this omission to its loss: that the failure to disclose this fact caused Caremark's injury through its undervaluation of the risk it was undertaking in accepting the notes as payment for its business. In short, Caremark has alleged that Coram made a fraudulent misstatement and that this misstatement was responsible for its damage.[6]
 
 
 18
 We do not believe that Caremark's claim is rendered infirm because its alleged injuries equally could have been caused by factors which Coram did disclose. Caremark pleaded that its injury was caused by its reliance on the very fact which Coram misrepresented, and that allegation is sufficient at this early stage of the litigation. Nor do we believe that the adequacy of Caremark's allegation is negated by its having mentioned in the complaint other causes that could have contributed to the fall in the value of the notes. As we have noted earlier, it is possible for more than one cause to affect the price of a security and, should the case survive to that point, a trier of fact can determine the damages attributable to the fraudulent conduct. See Ackerman, 947 F.2d at 849.
 
 
 19
 Our holding does not preclude Coram from submitting, at the summary judgment stage, that Caremark cannot prove the loss causation that it has alleged in this complaint. At summary judgment, this burden usually is met by establishing that the decline in the value of the security is attributable in total to some other factor. See Provenz v. Miller, 102 F.3d 1478, 1492 (9th Cir.1996); see also Ryan v. Wersi Elec. GmbH & Co., 59 F.3d 52, 54 (7th Cir.1995) (per curiam). To defeat Caremark's claim at summary judgment, therefore, Coram would have to establish that, as a matter of undisputed fact, the depreciation in the value of the notes could not have resulted from the alleged false statement or omission of the defendant.
 
 
 20
 Because the district court erred in dismissing the complaint,[7] we must reverse its judgment and remand the case for further proceedings consistent with this opinion.
 
 Conclusion
 
 21
 Accordingly, the judgment of the district court is reversed, and the case is remanded for proceedings not inconsistent with this opinion.
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 [1]
 After oral argument in this case, the parties suggested that we suspend our consideration of this matter because of pending settlement negotiations. We did so, but were later informed by the parties that their earlier expectations had not been realized. We therefore resumed our consideration of the case. Accordingly, the stay previously entered is vacated. To avoid further delay, we issue the opinion initially in typescript form
 
 
 [2]
 See also Searls v. Glasser, 64 F.3d 1061, 1065 (7th Cir.1995); Schlifke v. Seafirst Corp., 866 F.2d 935, 943 (7th Cir.1989)
 
 
 [3]
 See also Kademian v. Ladish, 792 F.2d 614, 628 n. 11 (7th Cir.1986); Panter v. Marshall Field & Co., 646 F.2d 271, 283-84, 291 (7th Cir.), cert. denied, 454 U.S. 1092 (1981)
 
 
 [4]
 See Harris Trust & Sav. Bank v. Ellis, 810 F.2d 700, 706 (7th Cir.1987) ("The plaintiff must prove damages, must establish the difference between the price received in fact and the price that would have been received but for the fraud.")
 
 
 [5]
 We note in passing that a district court may dismiss a complaint for failure to comply with the requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Hartz v. Friedman, 919 F.2d 469, 471 (7th Cir.1990); see also In re Westinghouse Sec. Litig., 90 F.3d 696, 702-04 (3d Cir.1996); Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir.1995); Kuehl v. FDIC, 8 F.3d 905, 908-09 (1st Cir.1993), cert. denied, 511 U.S. 1034 (1994); Salahuddin v. Cuomo, 861 F.2d 40, 41-42 (2d Cir.1988)
 
 
 [6]
 In securities fraud cases under Rule 10b-5, damages are usually the difference between the price of the stock and its value on the date of the transaction if the full truth had been known. Pommer v. Medtest Corp., 961 F.2d 620, 628 (7th Cir.1992); Harris v. Union Elec. Co., 787 F.2d 355, 367 (8th Cir.), cert. denied, 479 U.S. 823 (1986)
 
 
 [7]
 Coram offers four alternate grounds upon which we may uphold the district court's dismissal. We do not find any of these grounds persuasive
 Coram first contends that Caremark's claim is simply one of corporate mismanagement and that such a claim is not cognizable under federal securities law. We believe that, fairly read, Caremark's complaint alleges more than an allegation about how Coram ran its company after it acquired Caremark's business. Rather, Caremark's complaint alleges that Coram misled Caremark as to its future business plans before Caremark accepted Coram's notes and that these misstatements or omissions of material fact affected the value of the notes on the date of closing of the Caremark/Coram deal. As we stated above, such a claim is cognizable under federal securities law.
 Second, Coram submits that Caremark failed adequately to allege scienter. Although Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud ... shall be stated with particularity," Rule 9(b) "does not require 'particularity' with respect to the defendant['s] mental state." DiLeo v. Ernst & Young, 901 F.2d 624, 629 (7th Cir.), cert. denied, 498 U.S. 941 (1990). Rather, the complaint need only "afford a basis for believing that the plaintiff[ ] could prove scienter." Id.; see also In re HealthCare Compare Corp., 75 F.3d at 281. In this case, Caremark alleged in its complaint that Coram represented in its 1994 Form 10-K, filed with the Securities and Exchange Commission on March 28, 1995, that its business strategy was to focus on its "core business" and to divest "non-strategic businesses," even though Coram had been negotiating to acquire Lincare since March 8. Assuming that a fact-finder determines that Lincare's respiratory business was a "non-core" or "non-strategic" business and that Coram's failure to disclose these negotiations was material, the fact-finder could then infer that Coram's failure to disclose its ongoing negotiations was done recklessly or with the intent to defraud. See Sundstrand Corp. v. Sun Chem. Corp., 553 F.2d 1033, 1043-45 (7th Cir.), cert. denied, 434 U.S. 875 (1977) (to prove scienter under Rule 10b-5, plaintiff must show either intent to defraud or recklessness). Thus, we believe that Caremark has alleged scienter sufficiently to avoid dismissal on the pleadings.
 Third, Coram maintains that its failure to disclose the attempted Lincare acquisition was not material in light of its disclosed plans to search for other home infusion providers to acquire. An omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Indus. v. Northway, Inc., 426 U.S. 438, 449 (1976). In this case, Caremark has alleged in its complaint that, if it had known of Coram's negotiations with Lincare, it "would never have agreed to the [Caremark/Coram] transaction as it was structured, if at all." This is a sufficient allegation of materiality to survive dismissal on the pleadings.
 Finally, Coram claims that it had no duty to disclose the Lincare acquisition to Caremark. We need not decide whether Coram had an independent duty to disclose its negotiations with Lincare. Caremark alleges that Coram twice represented that its strategy was to focus on its "core business" and to divest "non-strategic businesses"--once during Caremark's due diligence investigation of Coram and again in Coram's Form 10-K. Having thus undertaken to disclose its plans regarding future acquisitions, Coram had a duty to do so truthfully. See Stransky v. Cummins Engine Co., 51 F.3d 1329, 1331 (7th Cir.1995); Ackerman, 947 F.2d at 846; Schlifke v. Seafirst Corp., 866 F.2d 935, 944 (7th Cir.1989); Panter v. Marshall Field & Co., 646 F.2d 271, 292 (7th Cir.), cert. denied, 454 U.S. 1092 (1981). Assuming that the trier of fact determines that Lincare's respiratory business was not within Coram's "core business" and that information of the Lincare acquisition was material, the trier of fact could also conclude, on the facts alleged here, that Coram breached its duty to disclose this attempted acquisition.