**William D. HAHN, Plaintiff–Appellant,**

v.

**McKENZIE CHECK ADVANCE OF IL-LINOIS, LLC, doing business as National Cash Advance, Defendant–Appellee.**

No. 99–3346.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 5, 2000.

Decided Feb. 2, 2000.

Daniel A. Edelman (submitted), Edelman, Combs & Latturner, Chicago, IL, for Plaintiff–Appellant.

Claudia Callaway (submitted), Paul, Hastings, Janofsky & Walker, Washington, DC, for Defendant–Appellee.

Before BAUER, EASTERBROOK, and KANNE, Circuit Judges.

PER CURIAM.

█ A "payday loan" is a short-term small loan handled with a minimum of paperwork; the loan agreement is a single sheet of paper, and the borrower receives cash within minutes of applying. The rate of interest is high, and the lender typically requires the borrower to write a check that can be submitted for payment after the borrower's next scheduled payday. We held in *Smith v. Cash Store Management, Inc.*, 195 F.3d 325, 328–31 (7th Cir. 1999), that a lender does not violate the Truth in Lending Act, 15 U.S.C. §§ 1601–77, or its implementing regulations, by referring to the post-dated check as "security." McKenzie Check Advance, another payday lender, likewise refers to the check as "security," and its form has been challenged solely on that account. The district court dismissed the complaint for failure to state a claim on which relief may be granted. 61 F.Supp.2d 813 (C.D.Ill.1999). We issued an order seeking the parties' views on the question whether *Smith* controls this appeal. McKenzie replied that it does; plaintiff William Hahn insisted that it does not.

*Smith* holds that a post-dated check properly may be called "security" because it gives the lender rights in addition to those provided by the loan agreement itself. We observed, among other things, that "the holder of the check has available remedies created by the Illinois bad check statute, 810 ILCS 5/3–806, which mandates that if a check is not honored, the drawer shall be liable for interest and costs and expenses incurred in the collection of the amount of the check." 195 F.3d at 330. Hahn sees this as an opening, for McKenzie's loan form itself provides not only that a dishonored check will lead to an additional fee of $25 but also that the borrower must pay any attorneys' fees necessary to collect. Because the note provides these remedies, Hahn insists, the check adds nothing and may not be called "security."

Our opinion in *Smith* anticipated such an argument and supplies its answer: the check creates remedies and entitlements *independent* of the note. That the two are similar does not destroy their independence. "Upon default on the loan agreement, [the lender] would get use of the check, along with the rights that go with it. [The lender] could simply negotiate it to someone else. [The lender] could take it to the bank and present it for payment. If denied, [the lender] could pursue bad check litigation. Additional value is created through these rights because [the lender] need not renegotiate or litigate the loan agreement as its only avenue of recourse." *Ibid.* Thus provisions in a loan agreement duplicating the legal remedies for a dishonored check do not make the check irrelevant, and referring to it as

"security" does not violate the Truth in Lending Act.

AFFIRMED.