Aimee K. JUMP, Angela Wehrle, and Irene Rothgeb, Plaintiffs,

v.

ACP ENTERPRISES, INC., d/b/a Cash Now, Mark S. Shaw, and Denise Shaw, Defendants.

No. 1:00CV0181AS.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 16, 2002.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Anne M. Burton, Edelman, Combs & Latturner, Chicago, IL, Clifford W. Shepard, Consumer Protection Law Offices, Indianapolis, IN, for Plaintiffs.

James P. Posey, Laura L. Reuss, Beers, Mallers, Backs and Salin, Fort Wayne, IN, Alan VerPlanck, James Fenton, Eilbacher Scott Inc., Fort Wayne, IN, for Defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The plaintiffs, Aimee Jump, Angela Wehrle and Irene Rothgeb (collectively referred to as "payday customers"), sued ACP Enterprises, Inc., d/b/a Cash Now (referred to as "ACP") for certain violations under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Indiana Uniform Consumer Credit Code and the Indiana Loansharking Statute.[1] Presently before the court is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its motion to dismiss, ACP focuses solely upon the substantive claims based upon its alleged violations of TILA. ACP does not address the substance of the supplemental state law claims filed against them; rather they contend that dismissal of those claims is warranted if the court finds that the payday customers have failed to state a federal claim under TILA. Specifically, the payday customers allege that ACP violated the disclosure provisions under TILA by 1) failing to disclose the existence of a security interest taken in the form of a "post-dated check" from the payday customers (P's Consolidated Compl. at ¶ 36(a)) and 2) setting forth a disclosed annual percentage rate on the agreements between ACP and the payday customers in an amount that greatly exceeded their legal obligation under Indiana law. (P's Consolidated Compl. at ¶¶ 35, 36(b)).

## I. Brief Background

ACP, until recently, specialized in making high interest "payday loans" to its various customers throughout the Northern District of Indiana. The business and mechanics of the "payday loans" are, by now, well known and documented in this particular circuit. See *Smith v. Cash Store Management, Inc.*, 195 F.3d 325 (7th Cir.1999); *Hahn v. McKenzie Check Advance*, 202 F.3d 998 (7th Cir.2000); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 123 F.Supp.2d 1079 (N.D.Ill.2000); *Davis v. Cash for Payday, Inc.*, 193 F.R.D. 518 (N.D.Ill.2000).

As in those cases, it is alleged here that ACP and the various payday customers entered into numerous loan agreements. The amounts of the loans were for very small amounts, usually between $100 and $200 dollars. However, in order to receive the loan amount the payday customers paid an unusually high finance charge, usually no less than $25 dollars. Thus, the annual percentage rates on these particular loans greatly exceeded the allowable finance charge under Indiana law. See IND.CODE § 24–4.5–3–508; See also *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind.2001). ACP required, as additional security for payment of the loans, that the payday customers issue a post-dated check in exchange for receiving the loan amount. The terms of the loans were typically two weeks in duration. At the end of the loan term, the payday customer either paid the loan amount to ACP or extended the loan by paying an additional finance charge. If payment was not tendered by the payday customer, ACP

---

1. The plaintiffs' claims against Mark and Denise Shaw were dismissed without prejudice pursuant to an order entered on August 29, 2002.

then had the option of cashing the post-dated check. The purpose of requiring the post-dated check was to give ACP added security that the loan amount would be paid in full. The post-dated check gave ACP certain additional legal rights and remedies which increased the likelihood of collection (i.e. Indiana bad check statute, Ind.Code §§ 26–2–7–(4–5)).

## II. Discussion

### 1. *Whether a post-dated check must be disclosed under TILA*

ACP argues that under TILA a post-dated check does not constitute a security interest and therefore ACP need not have disclosed the post-dated check as such on its loan agreements with its customers. TILA and Regulation Z, TILA's implementing regulation, require that a creditor disclose accurately a security interest that is taken by a lender and to describe accurately the property in which the interest is taken. 15 U.S.C. § 1638; 12 C.F.R. § 226.18(m). Regulation Z defines a "security interest" as "an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." 12 C.F.R. § 226.2(a)(25).

▮ 15 U.S.C. § 1638(a)(9) states:
(a) Required disclosures by creditor
For each consumer credit transaction other than under an open end credit plan the creditor shall disclose each of the following items, to the extent applicable:
(9) Where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as a part of the credit transaction, or (B) property not purchased as a part of the credit transaction, or (B) property not purchased as a part of the credit transaction identified by item or type ... 15 U.S.C. § 1638(a)(9).

ACP argues, unconvincingly, that it was uncertain whether a post-dated check constituted a security interest in property requiring disclosure on the security agreement. Numerous decisions in this circuit following *Cash Management* have determined that a post-dated check, like those obtained by ACP from the payday customers, constitutes a security interest which must be disclosed on the loan agreement. *Van Jackson v. Check 'N Go of Illinois, Inc.*, 123 F.Supp.2d 1079 (N.D.Ill.2000); *Davis v. Cash for Payday, Inc.*, 193 F.R.D. 518 (N.D.Ill.2000); *Mitchem v. American Loan Co.*, 99 C 1868, 2000 WL 290276, at *3 (N.D.Ill.2000); *Mitchem v. GFG Loan Co.*, No. 99 C 1866, 2000 WL 294119 (N.D.Ill.2000); *Pinkett v. Moolah Loan Co.*, No. 99 C 2700, 1999 WL 1080596 (N.D.Ill.1999). This court is in agreement with those decisions.

Clearly, ACP sought the post-dated checks as additional security for the payment of the loans made to the payday customers. Under Indiana law, a security interest in an instrument, here the post-dated check, occurs when a creditor pursuant to an agreement takes possession of the collateral, here also the post-dated check. See IND.CODE § 26–1–9.1–203(b). Typically, in situations where a security interest is taken in the form of a pledge, the collateral has a value independent from the amount owed pursuant to the security agreement. See *In re Rolain*, 823 F.2d 198 (8th Cir.1987); (promissory note held by bailee of a creditor used as collateral to ensure the payment of the loan by the debtor). In those situations the collateral is used to secure payment if a debtor fails to pay the amount agreed upon in the primary agreement by allowing for a secondary source that remains available for the creditor to collect against.

Here unlike the typical situation explained above, the post-dated check does

not represent an alternative source of payment should the payday customer fail to pay the loan amount. However, as noted in *Cash Management,* the post-dated checks do provide some additional extrinsic value to the transaction. See *Smith,* 195 F.3d at 330–331. Otherwise, why would ACP seek the post-dated checks as part of the transaction. The majority opinion in *Cash Management* opined that the post-dated check had value to a "creditor in the event of default beyond the value" of the promise in the loan agreement. *Id.* at 330. It is without question that ACP sought the post-dated checks from its customers as an additional avenue of securing full payment from its customers, much like the security interests taken in a typical Article Nine transaction. In this situation the collateral taken is not in the amount printed on the face of the check, but rather in the form of the rights created by state law. *Id.* at 331. These rights do constitute some further value beyond the face amount of the post-dated checks. *Id.*

As such, the requirements for attachment and enforceability of a security interest under Indiana law have been satisfied. Here value has been given by ACP in the amount of the consumer's "payday loan." IND.CODE § 26–1–9.1–203(b)(1). Clearly, the payday customers have rights in the post-dated checks retained by ACP. IND.CODE § 26–1–9.1–203(b)(2). Finally, the post-dated checks are in the possession of ACP. IND.CODE § 26–1–9.1–203(b)(3)(B). Thus, the requirements for a security interest in the post-dated checks have been satisfied under Indiana law. That interest must be disclosed pursuant to 15 U.S.C. § 1638(a)(9). Therefore, the court now **DENIES** the motion to dismiss with respect to the claim that ACP failed to adequately disclose the existence of the post-dated check as a security interest in violation of TILA.

## 2. Whether ACP's disclosure of the APR in the agreement violated TILA

■ Next, ACP argues that its disclosure of the APR in its loan agreements with the payday customers does not violate TILA because the disclosure represented an accurate expression of the interest charged in the loan transaction. As noted in this court's prior unpublished opinion such an argument does not carry the day for ACP and therefore its motion to dismiss this claim is **DENIED.**

■ The Indiana Supreme Court in *Livingston* was called upon to determine under *existing* Indiana law whether the finance charges represented by ACP in its loan agreements violated the Indiana Consumer Credit Code and the Indiana Loansharking Statute. See *Livingston v. Fast Cash USA, Inc.,* 753 N.E.2d 572 (Ind. 2001). The Indiana Supreme Court clearly and unambiguously determined that such transactions in fact violated those particular state statutory enactments. The disclosures in ACP's loan agreements, therefore, grossly misrepresented the allowable APR under Indiana law. It is clear under seventh circuit precedent a disclosure that is misleading under state law can give rise to a violation of TILA. See *Tinsman v. Moline Beneficial Fin. Co.,* 531 F.2d 815, 818 (7th Cir.1976) ("A reading of the form would lead the debtors to conclude erroneously that the security interest extends to all goods located in or about their residence at any time the loan agreement is in effect, even though Illinois law precludes such a security interest covering consumer goods acquired more than 10 days after the secured party gives value.")

■ The purpose of TILA is to provide clear and complete disclosure to less-informed consumers, with this obligation comes the responsibility to accurately disclose the finance charge according to state

law. In this regard, ACP failed miserably. It appears they simply ignored the provisions under the Indiana Consumer Credit Code in arriving at the finance charges they would demand from the payday customers. Here the loan agreement erroneously leads the payday customers into believing that the finance charges are lawful, even though those finance charges were usurious under the law of Indiana at the time of the loan transactions. As this court previously found a contracted for finance charge and APR which are found later to be violative of the Indiana state usury laws can form the basis of an actionable TILA claim. *Wehrle v. E–Z Cash Systems, Inc.*, No. 1:00cv0276AS; See also; *In re Brown*, 134 B.R. 134, 145 (Bankr. E.D.Pa.1991).

3. *Whether the consumer loan agreements entered into between ACP and the Payday customers are governed by TILA or Regulations Z.*

██ Inspired by a footnote in this court's previous unpublished opinion in *Wehrle v. E–Z Cash Systems, Inc.*, No. 1:00cv0276AS, ACP has raised a new argument in its reply brief to support the dismissal of the TILA claims filed by the payday customers. Initially, the court notes that such new arguments cannot be raised by a party seeking dismissal of a claim under Rule 12 in its reply brief. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir.1997); *Petri v. Gatlin*, 997 F.Supp. 956, 977 (N.D.Ill.1997). For this reason alone, the court finds this particular argument to be waived.

██ More important, although this court raised the issue on its own, the Seventh Circuit has clearly found that the requirements imposed by TILA apply to payday loans. *Smith v. Cash Store*, 195 F.3d 325 (7th Cir.1999); *Hahn v. McKenzie Check Advance of Illinois*, 202 F.3d 998 (7th Cir.2000). In light of the fact that the Seventh Circuit and several district courts in this circuit have applied TILA to these particular types of consumer loans, the court finds that the provisions of TILA do apply to the particular "payday loans" at issue here. While the Federal Reserve Board did in fact issue a clarification as to its opinion on whether TILA applied to the payday loan transactions. The clarification did not change existing law; rather it attempted to only notify those particular lenders of their existing obligations. Additionally, this clarification appears to be based upon the numerous federal courts' holdings that TILA in fact did apply to such a situation. For these reasons, the court now finds that TILA did apply to the transactions at issue in this case.

### III. Conclusion

For the foregoing reasons the Defendant's motion to dismiss is **DENIED. IT IS SO ORDERED.**