In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2666

Derrick D. Smith and Valerie D. Smith,

Plaintiffs-Appellants,

v.

Check-N-Go of Illinois, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 1958--Harry D. Leinenweber, Judge.

No. 99-2667

Sandra Brown and Deborah Jackson,

Plaintiffs-Appellants,

v.

Check-N-Go of Illinois, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2073--Harry D. Leinenweber, Judge.

Argued November 9, 1999--Decided December 23, 1999

Before Bauer, Easterbrook, and Kanne, Circuit Judges.

Easterbrook, Circuit Judge.  We have for
consideration two of the many payday-loan cases
now pending in this court./* A "payday loan" is
a short-term loan that is to be repaid on the
borrower's next payday. The transaction is
handled with a minimum of paperwork; the loan
agreement is a single sheet of paper, and the
borrower receives cash within minutes of
applying. The rate of interest is high (in the
range of 500% annually), and the lender typically
requires the borrower to write a check that can

be submitted for payment after the borrower's next scheduled payday. We held in Smith v. Cash Store Management, Inc., No. 99-2472 (7th Cir. Oct. 27, 1999), that a lender does not violate the Truth in Lending Act, 15 U.S.C. sec.sec. 1601-77, or its implementing regulations, by referring to the post-dated check as "security." We also concluded that a receipt stapled to the front of the loan agreement, and obscuring some of its terms, might violate the requirement that all disclosures be made "clearly and conspicuously". 15 U.S.C. sec.1632(a); 12 C.F.R. sec.226.17(a)(1). (Congress has authorized the Federal Reserve to make regulations with the force of law. 15 U.S.C. sec.1604(a).) The two appeals consolidated for treatment here present a third question: whether a circle drawn by hand around the due date violates the rule that the finance charge and annual percentage rate be "more conspicuous than any other disclosure, except the creditor's identity". 12 C.F.R. sec.226.17(a)(2).

  Section 226.17(a) provides (footnotes omitted):

   (1)  The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under sec.226.18. The itemization of the amount financed under sec.226.18(c)(1) must be separate from the other disclosures under that section.

   (2)  The terms finance charge and annual percentage rate, when required to be disclosed under sec.226.18(d) and (e) together with a corresponding amount or percentage rate, shall be more conspicuous than any other disclosure, except the creditor's identity under sec.226.18(a).

The appendix to this opinion reproduces the front side of the loan agreement signed by plaintiff Derrick Smith. The area immediately below "Our Disclosure to You," which the parties call the "federal box," groups the mandatory disclosures, complying with the segregation requirement in sec.226.17(a)(1). The borders around the annual percentage rate and finance charge sections are thicker than those around the amount financed and total of payments; the phrases "annual percentage rate" and "finance charge" are in boldface, while "amount financed" and "total of payments" are not. Check-N-Go, the principal defendant, contends that as a matter of law this treatment

satisfies the requirement that the finance charge and annual percentage rate be "more conspicuous than any other disclosure". The finance charge and annual percentage rate need not be the most prominent words on the page; they need only be the most conspicuous of the "disclosures." The most eye-catching parts of this form are the caption "Consumer Loan Agreement", the footer "COPY NON-NEGOTIABLE", and the line "NOTICE: SEE ADDITIONAL TERMS ON THE REVERSE SIDE OF THIS NOTICE". Plaintiffs do not contend that the emphasis on these phrases violates the regulation, which makes us wonder what is really at stake if borrowers' attention properly may be diverted from the finance charge and annual percentage rate. Still, plaintiffs say that the due date is a required disclosure and that the hand-drawn circle makes it "more conspicuous" than the boldface boxes and type used for the finance charge and annual percentage rate. Concluding otherwise, the district judge dismissed the complaints under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted.

For reasons elaborated in Walker v. National Recovery, Inc., No. 99-2119 (7th Cir. Dec. 21, 1999), Rule 12(b)(6) does not authorize dismissal. An allegation that a particular disclosure is "more conspicuous" than the finance charge or annual percentage rate states a claim on which relief may be granted. The possibility that the allegation is false--even that attachments to the complaint demonstrate its falsity--does not mean that the complaint fails to state a claim. Instead the attachments authorize the district court to grant judgment on the pleadings under Rule 12(c), or to convert the motion to dismiss into a motion for summary judgment and to grant that relief (a possibility raised by Rule 12(b) itself). Neither step is appropriate if there are material factual disputes, but "conspicuousness" for purposes of sec.226.17(a)(2) is a matter of law rather than fact, so decision on the papers was proper, even though the district judge cited the wrong rule.

Cash Store Management holds that whether particular disclosures are "clear" is an issue of fact, for the extent to which one piece of paper obscures another varies, and clarity depends on what a particular borrower would observe. Similarly, Walker holds that whether a particular form of words confuses an unsophisticated person (the standard under the Fair Debt Collection Practices Act) is a question of fact, because confusion is in the eye (or mind) of the beholder. What is clear to a lawyer or logician may bewilder a less sophisticated person. See also Johnson v. Revenue Management Corp., 169

F.3d 1057 (7th Cir. 1999). But the legal standard under the Truth in Lending Act is the objective "reasonable person" approach, see Cash Store Management, slip op. 4-5. More to the point, sec.226.17(a)(2) has nothing to do with borrowers' comprehension. What is "more conspicuous than any other disclosure" depends on the contents of the form, not on how it affects any particular reader. See Herrera v. First Northern Savings & Loan Ass'n, 805 F.2d 896, 900 (10th Cir. 1986), and Dixey v. Idaho First National Bank, 677 F.2d 749 (9th Cir. 1982), both of which treat compliance with sec.226.17(a)(2) as a legal rather than factual matter.

Let us assume, as plaintiffs contend, that handwritten (or hand-drawn) portions of the form are especially "conspicuous" to some borrowers. Others may find the person-specific terms in a typeface different from the rest of the form especially eye-catching--and then every loan agreement would violate the Act, because lenders put details such as dates, rates, and amounts into blank spaces. Many eyes may be most drawn to boldface type, while to other borrowers italic type may take precedence. Is 14-point italic more or less "conspicuous" than 16-point bold, or boxed 14-point large and small capitals? Perhaps another contingent responds to the difference between sans-serif type and type with serifs. The preprinted parts of defendant's forms are in proportionally spaced sans-serif type in the Helvetica family, but the details added to complete the transaction are in a monospaced serif face from the Courier family of type. Some readers may think that statements in the middle of the page are most prominent; other eyes may gravitate to the top or bottom. Yet the premise of the statute and regulations is that one size fits all; a form complies or it doesn't, and the fact that some or even many of the recipients are abnormal in their perception of "conspicuousness" does not affect the form's validity. Thus the inquiry must be objective, which makes the question legal rather than factual.

If we were to treat the determination of conspicuousness as a matter of "fact," then the regulation would fail in its purpose. No matter what a lender did, a borrower could say that to his eyes the combination of color, typeface, spacing, size, style, underlining, capitalization, border, and placement made one feature of the agreement stand out relative to the mandatory disclosures, or emphasized one disclosure over another. Forget the hand-drawn circle for a moment. The finance charge and annual percentage rate are in the middle of the page, in boldface, sans-serif type enclosed by vertical rectangles. The due date, printed in a

monospaced serif face, is in a larger box with a horizontal orientation a little lower on the page. Do these differences themselves violate the Truth in Lending Act? If plaintiffs are right, then lenders can't know the answer until after a trial--and if Lender A prevails in one trial, Lender B with an identical form could lose the next (or Lender A could lose to the next borrower). Uncertainty would redound to borrowers' detriment, for in competition lenders must recover their costs, and an unavoidable cost created by legal dubiety would be passed on to borrowers in the form of higher interest rates. The Federal Reserve has included many sample forms in its regulations, but if the effect of typeface and type placement is open to factfinding, then even the model forms are not safe.

Form H-2, in 12 C.F.R. Part 226 App. H, is similar to the contract Check-N-Go used. The model form has some additional boxes and blanks to fill in, and lenders (like auto rental companies and other users of forms) likely try to direct borrowers' attention to these options with hand-drawn Xs and circles so that borrowers can make the necessary choices. (For example, Form H-2 has a yes-or-no pair of checkboxes so that the borrower may elect to receive or forego an itemization of the amount financed.) Neither the checkboxes nor lenders' attempts to draw consumers' attention to them detract from the conspicuous placement, border, and typeface of the mandatory disclosures. Borrowers who care about the finance charge and annual percentage rate could locate them in a trice. Section 226.17(a)(2) requires the lender to emphasize the finance charge rather than the amount financed, the annual percentage rate rather than the amount the borrower receives. A reminder to the borrower that other choices must be made does not imperil this preference. Likewise with a circle around the due date. The principal disclosures still stand out, and the relative visibility of the financial terms is unchanged.

When a lender employs the model form recommended by the Federal Reserve, an isolated circle or mark cannot create liability. Although the Federal Reserve could forbid any alterations of the form, it has not done so; the extensive regulations do not hint that the hand-drawn checkmarks, Xs, and circles so commonly added to preprinted forms in the process of signing must be extirpated. Perhaps a determined effort to embellish the form, as by using a yellow marker to highlight figures other than the annual percentage rate and finance charge, would make the highlighted figures "more conspicuous" despite the bolder type and boxes for the

disclosures the Federal Reserve wants emphasized. But a single circle around the due date--the piece of information most vital to the consumer once the loan has been made, for failure to repay on time can lead to penalties--does not turn a model form into a violation of law.

Affirmed

/* In addition to the two cases listed in the caption, the list includes two already decided by the court and eight more pending. Smith v. Cash Store Management, Inc., No. 99-2472 (7th Cir. Oct. 27, 1999), and Smith v. Fast Cash Advance, Inc., No. 99-2673 (7th Cir. Nov. 3, 1999) (unpublished order), are the decided cases. The others are Smith v. Americash Inc., No. 99-2936; Jackson v. Americash Loans, LLC, No. 99-3365; Jackson v. American Loan Co., No. 99-2596; Terry v. Payday Loan Corp. of Illinois, No. 99-3652; Laws v. Payday Loan Corp. of Illinois, No. 99-3625; Mitchem v. Payday Check Advance, Inc., No. 99-3353; Brown v. Payday Check Advance, Inc., No. 99-3110; and Hahn v. McKenzie Check Advance of Illinois, LLC, No. 99-3346. All of these cases were filed by a single law firm, on behalf of a stable of clients most of whom have filed or joined multiple suits. For reasons that we have been unable to discover, the Northern District of Illinois, in which these suits were filed, did not consolidate them before a single judge, even though the issues and parties have substantial overlap. Our court can do better. From now on, all appeals concerning payday loans will be handled by this panel, see Operating Procedure 6(b), and we will issue orders in each of the other eight pending appeals seeking the parties' views on the question whether these appeals should be decided summarily on the authority of Smith v. Cash Store Management and this opinion.

APPENDIX