Siegfried LIFANDA, Plaintiff–
Appellant,

v.

ELMHURST DODGE, INCORPORAT-
ED, United Security Systems, Incorpo-
rated and William C. Nazha, Defen-
dants–Appellees.

No. 00–1224.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 2000.

Decided Jan. 12, 2001.

Daniel A. Edelman, John M. Broderick (argued), Edelman, Combs & Latturner, Chicago, IL, for Plaintiff-Appellant.

Hall Adams, III, (argued), Williams, Montgomery & John, Chicago, IL, for Defendants-Appellees.

Before ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Siegfried Lifanda purchased a 1999 Dodge Caravan from Elmhurst Dodge on July 2, 1999, which he financed by entering into a retail installment contract. As part of the vehicle purchase, Elmhurst Dodge also sold Lifanda "Auto Theft Registration" protection (ATR), which was an anti-theft etching identification program that promised to pay Lifanda the lesser of $3000 or the amount paid by his insurance company, if his vehicle was stolen within three years from the date of purchase. The ATR was issued by defendant United Security Systems, Inc., for $389.52 and was underwritten by an insurance company. Lifanda complains that the ATR is a form of property insurance protecting against theft of the vehicle, and that the defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., by failing to include the ATR charge as part of the finance charge.

The district court granted Elmhurst Dodge's motion to dismiss the TILA claim, and declined to exercise jurisdiction over the remaining state law claims. The court noted that the TILA requires lenders to clearly and accurately disclose the finance charges that customers will bear in credit transactions, *citing* 15 U.S.C. § 1683(a)(3), and that TILA includes insurance premiums in its definition of finance charges. TILA provides that

> charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property ... shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

15 U.S.C. § 1605(c). The regulation implementing that provision, referred to as Regulation Z, largely tracks that language, stating that premiums for insurance against loss or damage may be excluded from the disclosure requirements if the consumer is informed (1) that the insurance coverage may be obtained from a person of the consumer's choice; and, for insurance obtained through the creditor, the consumer is notified of (2) the amount of the premium, and (3) the term of the insurance. 12 C.F.R. § 226.4(d)(2). The district court held that the disclosures made by the defendants satisfied those requirements, and thus granted the motion to dismiss.

On appeal, Lifanda asserts that the court erred in holding that the disclosures made by the defendants satisfied the TILA requirements as a matter of law. Specifically, Regulation Z mandates that the TILA disclosures be made "clearly and conspicuously," 12 C.F.R. § 226.17, and Lifanda argues that the court could not properly find as a matter of law that the alleged disclosures were clear and conspicuous here. As an initial matter, we note that although the motion in this case was brought pursuant to Rule 12(b)(6), we have made it clear that Rule 12(b)(6) is not the appropriate vehicle for such a dismissal. *Smith v. Check–N–Go of Illinois, Inc.*, 200 F.3d 511, 514 (7th Cir.1999); *Walker v. National Recovery, Inc.*, 200 F.3d 500 (7th Cir.1999). As in *Check–N–Go*, allegations that disclosures are not "clear and conspicuous" state a claim upon which relief may be granted. *Id.* "The possibility that the allegation is false-even that attachments to

the complaint demonstrate its falsity-does not mean that the complaint fails to state a claim. Instead the attachments authorize the district court to grant judgment on the pleadings under Rule 12(c), or to convert the motion to dismiss into a motion for summary judgment and to grant that relief (a possibility raised by Rule 12(b) itself)." *Check–N–Go*, 200 F.3d at 514. Therefore, the motion should have been converted into one for judgment on the pleadings or for summary judgment. In any event, we review the court's decision *de novo*, examining all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir.1997); *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir.1998). We will uphold dismissal of a complaint only if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.*

■ We view the " 'sufficiency of TILA-mandated disclosures ... from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor.' " *Smith v. Cash Store Management, Inc.*, 195 F.3d 325, 327–28 (7th Cir.1999), *quoting Cemail v. Viking Dodge*, 982 F.Supp. 1296, 1302 (N.D.Ill.1997). Therefore, our task is to determine whether, taking the facts in the light most favorable to Lifanda, the TILA disclosures were clear and conspicuous to an ordinary con-

sumer as a matter of law. The defendants in fact rely upon three different documents to satisfy the TILA disclosures here, which are reproduced in relevant part in the appendix to this opinion.[1] According to the defendants, the retail installment contract informed Lifanda that he could obtain ATR insurance elsewhere, the purchase order revealed the premium for the ATR protection, and the ATR form set forth the term of the ATR protection.

■ We turn first to the retail installment contract, which provides in pertinent part:

> Liability insurance coverage for bodily injury and property damage caused to others is not included in this contract. You may obtain vehicle insurance from a person of your choice.
>
> Credit life, credit disability, guaranteed automotive protection coverage, and other optional insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the premium.

Immediately below those clauses, the contract contains four boxes, with a space to be checked if that box is applicable. Three of the boxes are respectively labeled, "CREDIT LIFE," "CREDIT DISABILITY," and "MECHANICAL BREAKDOWN _____," with the fourth being generically labeled "TYPE _____." Within each box, there are spaces for the following information to be provided:(a) "TERM," (b) "PREMIUM," and (c) "IN-

---

1. 12 C.F.R. § 226.17(a) states that the required disclosures shall be grouped together and be segregated from everything else, but indicates that the disclosures under § 226.18(n) "may be made together with or separately from other required disclosures." 12 C.F.R. § 226.17 n. 38. The § 226.18(n) disclosures are those required in order to exclude insurance premiums from the finance charge, including the disclosures that insurance may be obtained from other persons, and the amount of the premium and term of the insurance. Here, those three disclosures are made in three different documents. Lifanda does not argue that those § 226.18(n) disclosures must themselves be

grouped together even though they may be separate from the other disclosures required by § 226.18. Both parties, therefore, assume not only that the three § 226.18(n) disclosures can be made separately from the other § 226.18 disclosures such as the finance charge and APR, but that those three disclosures may be made separately from each other and thus that even the § 226.18(n) disclosures themselves need not be grouped together. Because Lifanda does not challenge the failure to group the § 226.18(n) disclosures together, we express no opinion on whether that is consistent with the regulations.

SURER." Each box also contains a line for the consumer to sign if she wants to purchase that optional insurance. None of the boxes are checked which indicates that no insurance is being provided under the contract, and next to each space ("premium," "insurer," etc.) is typed "N/A" for Not Applicable.

The defendants maintain that the above section clearly and conspicuously informs Lifanda of his right to obtain ATR insurance elsewhere. That argument, however, is problematic on a number of levels. First, the sentences must be read in context rather than in isolation. The first sentence of the initial 2 sentence paragraph informs the purchaser that certain types of insurance—bodily injury and property damage caused to others—are not included in the contract. Immediately following that sentence is the statement that "you may obtain vehicle insurance from a person of your choice." An ordinary construction of that paragraph would lead the reader to conclude that liability coverage for bodily injury or property damage caused to others is not included in the contract, but may be obtained from other persons. It says nothing about insurance that is provided in the contract. We simply cannot conclude as a matter of law that the statement provides clear and conspicuous notice that ATR protection included in the contract may be obtained elsewhere.

Our concerns are magnified by another problem, which is the failure of any document to identify ATR protection as a form of insurance. In fact, although they concede the point solely for the purpose of the motion to dismiss, the defendants otherwise maintain that ATR protection is not insurance. Given that even the defendants are not certain that ATR protection should be considered insurance, and that the documents do not identify it as such, it is particularly unconvincing for the defendants to argue that a sentence informing Lifanda of the right to obtain *vehicle insurance* elsewhere is clear and conspicuous

notice that he can obtain *ATR protection* from others.

Finally, this potential for confusion is further heightened by the section that follows the one quoted above. As is set forth above, the subsequent text provides that credit life, credit disability, guaranteed automotive protection, and other optional insurance are not required and will not be provided unless the buyer signs and agrees to pay the premium. Four boxes following that text set forth those categories, with the last box generically labeled "Type _____," presumably to include the category of "other optional insurance." Like the other boxes, however, that box is not checked and is marked "N/A" for not applicable. That indicates that no optional insurance is being provided under the contract, which would further negate any implication that ATR protection was "vehicle insurance" under the disclosure statement. In other words, in the one section that would have identified ATR protection as insurance, the defendants failed to make that connection, and instead created the opposite perception by denying that any optional insurance was being provided under the contract even though ATR protection was being provided. That failure to identify ATR protection as insurance further decreases the likelihood that the buyer would read the disclosure statement as including ATR protection, and thus that the disclosure could be considered clear and conspicuous as a matter of law. In fact, a plain reading of the section provides no clue that it relates to ATR protection, or to any other insurance provided under the contract, and thus it provides little, if any, support for a finding that the TILA disclosure requirement is met. In summary, we cannot hold as a matter of law that the above disclosure satisfied TILA where (1) the disclosure was made in the context of a discussion of insurance not provided in the contract rather than insurance included in the contract, (2) the ATR protection is never labeled "insurance," and (3) parts of the contract imply that it is not considered insurance at all.

 The other TILA disclosure requirements at issue concern the term of the insurance and the amount of the premium. Here, too, the defendants are not entitled to judgment at this stage. The term of the insurance is set forth in the Auto Theft Registration form, but is set forth in the smallest type on the form, which is so minuscule as to be barely legible. Although the district court notes that TILA does not mandate any minimum type size, it simply does not follow that type size is irrelevant to a determination of whether a disclosure is "conspicuous." If the term "conspicuous" is to retain any meaning at all, it cannot be met as a matter of law by type disproportionately small to that in the rest of the document, and which is itself barely legible. *See Channell v. Citicorp National Services, Inc.*, 89 F.3d 379, 382 (7th Cir.1996) (noting that the term "conspicuous" is a staple of commercial law that refers to the mode of presentation, and is defined in the UCC as "so written that a reasonable person against whom it is to operate ought to have noticed it.") Far from being conspicuous, the "disclosure" here is quite the opposite.

 Finally, the amount of the premium is allegedly set forth on the purchase order under the category "Vehicle Theft Registration." Nothing in the documents, however, identifies that as a premium or the Vehicle Theft Registration as insurance. The documents do not even indicate whether that is the only payment due for ATR coverage. On the retail installment contract itself, as previously discussed, the boxes identifying insurance coverage are all marked "N/A," as is the space marked "PREMIUM," thus indicating that no premiums are being paid for any type of "other optional insurance not required to obtain credit," which would presumably include ATR protection. On that contract, the ATR payment is not separately listed at all, but rather was already added in to the price listed as the "Cash Price" for the vehicle. The forms are thus ambiguous at

best on critical issues such as whether the payment is a premium for insurance. In addition, the ATR protection covered a three-year term, and nothing in the documents indicates whether the premium is an annual or a one-time payment. We cannot state as a matter of law that the amount of the premium is clearly and conspicuously set forth in the documents.

· That would end our discussion, except that the defendants propose an alternative argument for affirmance. They contend that the TILA disclosures are not even required because the ATR protection was not a finance charge under TILA. The defendants argue that a charge is considered a "finance charge" only if it is imposed as an incident to the extension of credit, and does not include charges of a type payable in a comparable cash transaction. For that proposition, the defendants rely on 15 U.S.C. § 1605(a), which defines "finance charge" as follows:

> (a) "Finance charge" defined. Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction . . . .

*See also* 12 C.F.R. § 226.4(a). The defendants argue that the ATR charge was not imposed as an incident of the extension of credit, and thus is not subject to the TILA disclosure requirements.

 As support for that contention, the defendants analogize the ATR protection to the GAP debt cancellation insurance discussed by this court in *McGee v. Kerr–Hickman Chrysler Plymouth*, 93 F.3d 380 (7th Cir.1996). GAP debt cancellation insurance protects a buyer in the event that the car is stolen, and limits the buyer's liability in such a circumstance to

the actual cash value of the vehicle as determined by the buyer's insurance company plus any past due charges at that time. The buyer is thus insured against the risk of a shortfall (or "gap") between the cash value determined by the insurance company and the amount still owed on the car. The *McGee* court began by noting that Regulation Z provides a number of examples of charges that are included and excluded as "finance charges," but that neither list specifically addressed debt cancellation agreements like GAP. *Id.* at 383. The court then held that the GAP coverage was not "incident to the extension of credit" because it did not affect the credit terms of the deal between McGee and Kerr–Hickman, and concluded that it therefore was not a "finance charge" under TILA. *Id.* at 384–85. The defendants assert that the ATR protection in this case is analogous to the debt cancellation coverage, in that it does not affect the credit terms and thus should not be considered a "finance charge."

 The reliance on *McGee* is misplaced. In contrast to the GAP coverage in *McGee*, the type of insurance at issue here is explicitly included in the statute as a "finance charge:"

(c) Property damage and liability insurance premiums included in finance charge. Charges or premiums for insurance written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property, shall be included in the finance charge....

15 U.S.C. § 1605(c); *see also* 12 C.F.R. § 226.4(b)(8). Therefore, the statute identifies this premium as a finance charge, and we need not engage in the type of analysis that the *McGee* court had to embark on once it determined that debt cancellation insurance was not referenced in the statute itself.

 Moreover, the *McGee* court's conclusion that GAP coverage is excluded from "finance charges" under the statute is inapposite because subsequent to the *McGee* decision, the Federal Reserve Board issued a final rule which amended the Regulation Z list of finance charges to explicitly include debt cancellation coverage written in connection with a credit transaction. 61 Fed.Reg. 49237–02. That rule specifically stated that it was imposing no additional disclosure requirements, but was merely a clarification that fees charged for debt cancellation coverage are considered finance charges. *Id.* at 49238. Therefore, the Federal Reserve Board has interpreted TILA in a manner contrary to the conclusion in *McGee*, and we owe deference to that interpretation unless it is "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). *McGee* itself in fact recognized that pending official staff commentary from the Federal Reserve Board would almost certainly result in a different conclusion on the issue of whether GAP protection charges were finance charges, and that official staff opinions are binding unless demonstrably irrational. 93 F.3d at 383–84. At the time of the *McGee* opinion, however, the proposed commentary had been withdrawn, and the court therefore proceeded with its analysis. *Id.* at 384. The *McGee* court noted, however, that even if the GAP charges were treated as finance charges under TILA, the disclosure requirements were met and thus the result would be the same. Therefore, the *McGee* reasoning is unhelpful to the defendants, given that the subsequent rule reached the conclusion that debt cancellation insurance is in fact included in the finance charge under Regulation Z. The ATR insurance at issue here is property insurance against loss or damage which is explicitly included in the statute as a finance charge, and the defendants have provided no convincing rationale for ignoring that plain language.

Because the district court properly analyzed the ATR protection as a finance charge under TILA, the disclosure re-

quirements apply. As set forth above, the defendants have failed to establish as a matter of law that the proper disclosures were made, and their motion to dismiss on that basis should have been denied. Accordingly, the decision of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

## APPENDIX

**NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION**

# AU⬤ THEFT REGISTRATION

CODE NO. [ ] S[ ]K NO. 83124

ELMHURST DODGE

_____ Dealership Name

6

United Security System will send your name and alpha-numeric code upon receipt of the completed document. For a period of three (3) years from the date of purchase of the vehicle's identification system United Security System will provide you with the following benefits:

In the event that the vehicle described below is stolen and not recovered, United Security System will pay the owner of the described vehicle an amount equal to the owner's Insurance company's payment or $3,000.00, whichever at least Important: In order to validate the GUARANTEE the following information must be provided to United Security System:

1. At the time of reporting a theft to the police department, you must call United Security System within 48 hours at (800) 988-2810.

2. A copy of the police report. This police report must be filed with United Security System within forty-five (45) days from the date of the theft of the vehicle.

3. Evidence that the covered vehicle was ensured for Comprehensive and/or Theft at the time of the theft. A copy of the policy would provide this evidence.

4. A copy of the settlement and payment from the insurance company providing the theft insurance for the owner.

5. The documents required in 2, 3, and 4, above PLUS written notice from the owner giving details of the theft, including a copy of this Guarantee must be submitted to: United Security System Administrator, 334 W. Grand Ave Elmhurst, IL 60126.

OTHER TERMS AND CONDITIONS
A. Employees are ineligible for benefits under the Guarantee.
B. Term of Guarantee is transferable for a fee of $39.95 by calling United Security System Administrator (800) 988-2810.
C. This agreement is non-cancelable.

| MAKE | MODEL | BODY TYPE | VEHICLE IDENTIFICATION NUMBER | YEAR |
|------|-------|-----------|-------------------------------|------|
| DODGE | CARAVAN | WG | 2B4FP25B9XR457530 | 1999 |

ELMHURST DODGE

Dealer's Name (Print) _____

Dealer's Address 750 NORTH YORK ROAD ELMHURST, IL 60126
 (street) (city) (state)

Dealer's Signature _____ Date of Signature 07/02/99 (code)

Customer's Name SIEGRIED LIFANDA
Customer's Address 590FS HEIDELBERY COURT E AURORA IL 60504 (830)978-2887
 (street) (city) (state) Customer's Phone #

Receipt of copy Acknowledged _____
 (Customer's Signature)

## Miles at time of Sale

**Elmhurst Dodge**

750 NORTH YORK ROAD, ELMHURST, IL 601?? PHONE (630) 833-6700

N? 72159

DEAL NO 59656

CUST NO S24080

| PURCHASER'S NAME | SIEGRIED LIFANDA | | DATE | 07/02/99 |
| PURCHASER'S ADDRESS | 3031 MIDDLEBURY COURT E AURORA IL | | ZIP CODE | 60504 |
| RESIDENCE PHONE | (630)978-2887 | | BUSINESS PHONE | (630)285-8400 |

| YEAR | MAKE | SERIAL NUMBER | BODY | MODEL | CYL. | MILEAGE | STOCK# | NEW OR USED | X |
|------|------|---------------|------|-------|------|---------|--------|-------------|---|
| 1999 | DODGE | 2B4FP25B9XR457530 | WG | CARAVAN | 4 | 6 | 83124 | NEW | |
| | | | | | | | | USED | |

| COLOR | CRANBERRY | SOURCE | | SALESPERSON | KEITH SILVESTAL |

**WARRANTY**

1. ☐ This vehicle is sold with the minimum power train components warranty provided under law for parts and labor

**OR**

2. ☐ This vehicle is sold as is with no warranty as to mechanical condition

**OR**

3. ☐ This vehicle is sold with the following warranty

I approve and accept.

The seller, Elmhurst Dodge, Inc., hereby expressly disclaims all warranties, either expressed or implied including any implied warranty of merchantability or fitness for a particular purpose, neither assumes for it any liability in connection with the sale of the vehicle. This disclaimer by the seller in no way affects the terms of the manufacturers warranty.

The items listed ar non-Mopar accessories and are not warranted by Chrysler Corporation.

X _____

The service contract you purchased is non-Chrysler, therefore is not covered by Chrysler Corporation.

X _____

| | | |
|---|---|---|
| SALES PRICE: | TAX NUMBER 24932538-2 | 15741.04 |
| ALARM | | 695.00 |
| CHRYSLER--MAY CARE | | 2375.00 |
| 84 / 75000 | | |
| VEHICLE THEFT REGISTRATION | | 389.52 |
| CODE NUMBER | | |
| DOCUMENTARY SERVICE FEE | | 46.88 |
| | SUB TOTAL | 19247.44 |
| | USED CAR ALLOWANCE | 1800.00 N/A |
| | FREIGHT AND HANDLING | |
| | SUB TOTAL | 17447.44 |
| | STATE AND LOCAL TAXES | 1017.39 |
| | LICENSE TITLE AND OTHER FEES | 61.00 |
| | TOTAL | 18525.83 |
| | BALANCE DUE ON TRADE IN | N/A |
| | TOTAL DUE | 18525.88 |
| DEPOSIT | | 3000.00 |
| FIN. CONT | | 15525.83 |
| TRADE TITLE RECIEVED ☐ | TOTAL CREDITS | 14525.83 |
| | CASH DUE ON DELIVERY REBATE | 1000.00 |

IN THE EVENT THE AUTOMOBILE COVERED BY THIS ORDER IS A USED AUTOMOBILE, THIS VEHICLE IS SOLD AS IS WITH NO WARRANTY AS TO MECHANICAL CONDITION UNLESS DEALER FURNISHES PURCHASER WITH A SEPARATE LIMITED WARRANTY

I represent that I am of legal age and the sole owner of the car to be traded in and that said car is fully paid and lien free, except balance due or lien

of $ ___N/A___ , in favor or _____

Used car traded in ___1990___ VOLV 760 NAME OF COMPANY SD OFFICE/ACCOUNT NO. YV1GA6941L0083263 165850

YEAR MAKE MODEL STK# 83124A SERIAL# MILEAGE STK#

The undersigned warrants the used car traded in to be in good condition to have never been used commercially, in livery, or as a taxicab, or as a police car not to have it cracked or welded block, or not to have been seriously damaged

The undersigned constitutes dealer as his attorney-in-fact to execute reassignment of any and all documents in connection with certificates of title issued, or to be issued by Secretary of State on the used car traded in, in the same manner as the undersigned might himself do

Purchaser agrees that this Order includes all of the terms and conditions on both the face and reverse side hereof, that this Order cancels and supersedes any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of agreement relating to the subject matters covered hereby, and that THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE. Purchaser by his execution of this Order acknowledges that he has read its terms and conditions and has received a true copy of this Order. WARRANTY, IF ANY, HAS BEEN FULLY EXPLAINED.
NO PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE ISSUED WITH THIS TRANSACTION UNLESS HEREIN STATED!

ACCEPTED BY _____

DEALER X _____ DATE
BUYER'S SIGNATURE